# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LINDA L. SHELTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-cv-6413 |
| ) | |
| RACHEL WRIGHT, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for summary judgment [76] filed by Defendants Rachel Wright, Gary Allen, and Cook County. For the following reasons, the Court grants the Cook County Defendants' motion for summary judgment [76]. Judgment will be entered in favor of Defendants and against Plaintiff Linda Shelton.

**I.   Background**

   **A.   Plaintiff's Response Brief**

Local Rule 56.1 requires that statements of fact contain allegations of material fact and that the factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. at 583-85 (N.D. Ill. 2000). In this matter, Defendants filed a Local Rule 56.1(a) Statement of Material Facts. In addition, as certified in Defendants' Motion for Summary Judgment, Defendants served upon Plaintiff the required Local Rule 56.2 Notice to Pro Se Litigants Opposing Summary Judgment [see docket entry 77]. Local Rule ("LR") 56.1(b)(3) requires the nonmoving party to submit a response to the moving parties' statement of facts containing numbered paragraphs corresponding to and concisely summarizing the paragraph to which it is directed and to admit or deny every fact proffered by the movant. LR

56.1(b)(3)(A)-(B); see also *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A nonmoving party's response may be stricken and the corresponding fact deemed admitted if the response is argumentative, neither admits nor denies a statement of fact, states that the party lacks sufficient knowledge to admit or deny, denies a fact but fails to cite contradictory evidence, admits portions of a fact but fails to admit or deny the remainder, or admits certain facts but nonetheless takes exception to them because of other additional facts the nonmovant thinks are important. See *Brown v. Advocate South Sub.Hosp.*, 2011 WL 6753995, at *4 n.2 (N.D. Ill. Dec. 20, 2011); *Davis v. Bierman*, 2004 WL 161523 (N.D. Ill. Jan. 21, 2004); *Wade v. Nat'l Railroad Passenger Corp.*, 2003 WL 22872111 at *3 (N.D. Ill. Dec. 3, 2003); *Ostgulen v. Lumberman's Mut. Cas. Co.*, 2002 WL 31121092 at *1 (N.D. Ill. Sept. 25, 2002).

Although *pro se* plaintiffs are entitled to a generous reading of their submissions, compliance with procedural rules is required. See *Cady v. Sheahan,* 467 F.3d 1057, 1061 (7th Cir. 2006) ("even *pro se* litigants must follow rules of civil procedure"). Thus, Shelton's status as a *pro se* litigant does not excuse her from complying with Local Rule 56.1. See *McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Coleman v. Goodwill Indus. of Se. Wis., Inc.,* 423 Fed. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of *pro se* litigants, they may nonetheless require strict compliance with local rules."); *Wilson v. Kautex, Inc.,* 371 Fed. App'x 663, 664 (7th Cir. 2010) ("strictly enforcing Local Rule 56.1 was well within the district court's discretion," even though the plaintiff was *pro se*) (citations omitted).

Here, Plaintiff has not submitted a response to Defendants' LR 56.1 statement of facts ("SOF") containing numbered paragraphs corresponding to and summarizing the paragraph to

which it is directed and admitting or denying Defendants' facts, despite being served with the requisite "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment." To the extent that Plaintiff has responded at all, the first eighteen paragraphs of her response to the Defendants' summary judgment motion pick a handful of facts from Defendants' memorandum, to which Plaintiff makes argumentative, conclusory, and improperly cited assertions of additional facts. To the extent that Plaintiff fails to cite record evidence in support of her assertions, the Court disregards those responses as noncompliant with the Local Rules and deems Defendants' facts admitted. See *McGuire v. UPS*, 152 F.3d 673, 675 (7th Cir. 1998); *Brown*, 2011 WL 6753995, at *4 n.2; *Sarlo v. Wojcik*, 2010 WL 3824161 at *4 (N.D. Ill. 2010) (striking portions of plaintiff's responses that were "narrative admissions or improperly assert[ed] additional facts").

Furthermore, in responding to Defendants' motion for summary judgment, Plaintiff for the most part has failed to counter Defendants' facts with properly supported facts of her own. See FRCP 56(e). Likewise, Plaintiff has failed to comply with LR 56.1(b)(3)(C), which requires a nonmoving party to submit a separate statement of additional facts that the party believes warrant denial of summary judgment. See LR 56.1(b)(3)(C); *McGuire v. UPS*, 152 F.3d 673, 675 (7th Cir. 1998). Since Plaintiff has failed to properly deny majority of Defendant's facts or to submit a statement of additional facts herself, many of Defendants' facts are uncontroverted. See FRCP 56(e); see also *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (finding that "[a] party will successfully oppose summary judgment only if it presents "definite, competent evidence to rebut the motion"). Where Plaintiff properly asserts facts that are supported by record evidence, the Court will take those facts in the light most favorable to Plaintiff. However, the Court will not take into consideration those additional facts improperly

asserted in her memorandum or not supported by record evidence. See *McGuire*, 152 F.3d at 675.

**B.     Facts**

Linda L. Shelton ("Plaintiff") is a resident of Oak Lawn, Illinois. Defendant Gary Allen is employed as an assistant chief in the Cook County Court Services Department ("CCCSD"). Defendant Rachel Wright, also known by her married name Rachel Pochie, is employed as a sergeant in the CCCSD. In her complaint, Plaintiff alleges that on October 10, 2007, she was unlawfully arrested by Defendants Allen and Wright for criminal trespass to state-supported land at the courthouse located at 555 W. Harrison, Chicago, Illinois, leading to her unlawful seizure and imprisonment. Plaintiff also alleges that Defendants Allen and Wright gave false information to the courts and in their incident and arrest reports, in order to cause an unlawful arrest and pursue a fraudulent prosecution without probable cause.

On October 10, 2007, Plaintiff went to the courthouse building at 555 W. Harrison in Chicago, Illinois, to pick up a document from the clerk's office regarding a misdemeanor case. Defendants Allen and Wright were on duty. Plaintiff arrived alone and carrying the following items: jacket, gloves, briefcase (containing a wallet and papers), cane, and medical kit (nebulizer kit). The nebulizer kit is used to treat Plaintiff's asthma. The nebulizer kit consisted of a battery pack, an electric cord, a container for the liquid medication, the medication, and a mouthpiece. The nebulizer kit was carried separately from Plaintiff's other items in a gray bag. Upon entering the building at 555 W. Harrison, Plaintiff proceeded to the security screening area. To pass through the security screening area, visitors must walk through a magnetometer (metal detector) and place their personal items on a belt for scanning by an X-ray machine.

Deputy Sheriff Suggs was working the women's security station. Plaintiff alleged that Suggs (who is not a defendant in this case) made "nasty comments" regarding Plaintiff's prior arrest. Plaintiff began to get upset because she felt that Suggs was "harassing" her. Plaintiff placed her briefcase, gray bag containing the nebulizer kit, and cane on the X-ray machine belt, and walked through the magnetometer. As Plaintiff walked through the magnetometer, she did not hear or see it go off. Suggs began to look through Plaintiff's bags. When Suggs opened Plaintiff's gray bag, Plaintiff explained to Suggs that the nebulizer kit has an electric cord, that she needed it, that she had used it in the building before, and that she had permission to bring it in. Plaintiff felt that Suggs was handling the nebulizer kit badly and was going to break it. Plaintiff grabbed the bag, put everything back in correctly, and admonished Suggs, telling her that "I didn't appreciate her nasty comments, and that they are all a bunch of liars, and I'm taking legal action, and that anything that they've charged me with I'm going to win, and anything I've been convicted of is going to be overturned because it's all bogus * * * [a]nd there is a lot of corruption in the courthouse."

At approximately 11:15 a.m., Defendant Allen observed Plaintiff causing a disturbance at the front door of the courthouse. Upon arriving at the scene, Suggs told Allen that Plaintiff had a prohibited item. Allen observed Plaintiff grab her items from Suggs, and Suggs instructed Plaintiff to go back through the magnetometer. Plaintiff refused to go back through the magnetometer, and after she grabbed her belongings, she proceeded to walk into the building, toward the clerk's office. Sergeant Demond Parker and Allen followed Plaintiff. Parker instructed Plaintiff to return to the screening area to be searched and to have her items inventoried, and Plaintiff refused. As Plaintiff was about to enter the clerk's office, Allen ran in front of her and told her she could not enter the clerk's office. Allen then instructed Plaintiff

several times that she must comply with the screening procedures. Plaintiff refused multiple requests to comply with the screening procedures. Plaintiff believed that Allen was "some kind of a nut case" and a "thug." Pl.'s Dep. at 24:6-11. According to Plaintiff, she did not know Allen was an assistant chief at the facility.

At approximately 11:25 a.m., Wright received a call via radio by Parker to respond to the first floor lobby. Upon arriving at the scene, Wright observed Plaintiff yelling loudly that she was not going back through security. Wright learned from other sheriff's deputies that Plaintiff was refusing to comply with the public search protocol for entering the facility at 555 W. Harrison. Wright, who was wearing a uniform, told Plaintiff that she had to go back through security, comply with the screening process, get searched, and inventory her property. According to Plaintiff's deposition, Wright "kept saying, you have to go back through security, and [Plaintiff] kept saying, I went through security." Pl.'s Dep. at 28:15-17). Plaintiff stated, "No. I'm not doing that again, and you're not searching me again. This is harassment, get these fucking thugs away from me." Allen Affidavit at ¶ 6; Walker/Pochie Affidavit at ¶ 5. Allen and Wright repeatedly asked Plaintiff to go back through security and advised her that no member of the public could gain entry to the building without being properly screened, and Plaintiff continued to yell and refused to go through screening a second time. Wright explained to Plaintiff that if she refused to be screened, she would have to vacate the building, to which Plaintiff responded that she was not going through screening and that she would not leave the building until she did what she came to do. Wright and Allen then informed Plaintiff that she must leave the building or she would be arrested for criminal trespass to state-supported land. After the verbal warning was given three to four times, Plaintiff did not comply and refused to leave the building, and instead continued to argue and attempted several times to walk past

Wright, Parker, and Allen. At that time, Wright informed Plaintiff that she was being placed under arrest for criminal trespass and began to handcuff her. Plaintiff initially resisted and then finally complied.

Wright, along with Deputy Sheriff Elizabeth Vargas and Deputy Sheriff Renee Hughes, escorted Plaintiff to the main lock up of the facility, where Wright read Plaintiff her Miranda rights and searched her. Vargas inventoried Plaintiff's property, and Plaintiff was processed. Plaintiff told Hughes that she might need medical attention, and Wright called the paramedics at approximately 11:55 a.m. The ambulance arrived at approximately 12:00 p.m, but Plaintiff refused medical attention.

Plaintiff has a court order from Judge Pantle, dated January 11, 2005, in the unrelated case of *People v. Linda Shelton*, 04 CR 17571, which read, "It is hereby ordered that the Defendant may bring food and medication into the courthouse." The order does not specifically address a "nebulizer kit" or electric cords and it does not specify the courthouse into which Plaintiff is allowed to bring medication and food. Judge Pantle was a judge located at the courthouse at 26th Street and California. Plaintiff did not produce and display Judge Pantle's order dated January 11, 2005 (or any other order) during the security screening process on October 10, 2007 at the 555 W. Harrison location.

## II.   Standard of Review

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual disputes that are irrelevant to the outcome of the suit "will not be counted." *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003) (quotation marks and citations omitted). In

7

determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**III. Analysis**

Plaintiff filed a complaint on October 13, 2009, asserting a § 1983 claim for unlawful arrest, seizure, and imprisonment against Defendants Wright, Allen, and Does (collectively, "the individual Defendants") (Count I); a § 1983 claim for due process violation against the individual Defendants (Count II); a state law malicious prosecution claim against the individual Defendants (Count III); a state law intentional and negligent defamation claim against the

individual Defendants (Count IV); a state law intentional infliction of emotional distress claim against the individual Defendants (Count V); and a *Monell* claim against Defendant Cook County ("Cook County") (Count VI). On March 9, 2011, after Defendants filed a motion to dismiss, the Court dismissed counts III to VI of Plaintiff's complaint. Plaintiff's remaining two counts are: 1) § 1983 claim for unlawful arrest, seizure, and imprisonment, and 2) § 1983 claim for due process violation.

### A. Probable Cause

Plaintiff brings § 1983 claims against Defendants for false arrest/seizure and false imprisonment. To prove a claim under § 1983 against Defendants, Plaintiff must show that a person acting under color of state law deprived her of a right, privilege, or immunity secured either by the Constitution or federal law. See, *e.g. Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). Defendants do not dispute that they were acting under color of state law at the time of Plaintiff's arrest. Rather, they argue that they had probable cause for Plaintiff's arrest.

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (citing *Potts v. City of Lafayette*, 121 F.3d 1106, 1113 (7th Cir. 1997)). "This is so even where the defendant officers allegedly acted upon a malicious motive." *Id.* (citing *Simmons v. Pryor*, 26 F.3d 650, 654 (7th Cir. 1993)). Police officers have probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed" an offense. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). The Court evaluates probable cause "not on the facts as an omniscient observer would perceive them," but rather "as they would have appeared to a

reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard." *Id.*; see also *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000); *United States v. Reis*, 906 F.2d 284, 289 (7th Cir. 1990) (courts determine the existence of probable cause by applying an objective standard; it is the mindset of the "reasonable officer" and not of the actual arresting officer that matters). The test, an objective one, is whether a reasonable officer would have believed the person had committed a crime. If the test is satisfied "the arrest is lawful even if the belief would have been mistaken." *Kelly*, 149 F.3d at 646. Thus probable cause has been described as a zone within which reasonable mistakes will be excused. *Id*.

Where the underlying facts supporting probable cause are not in dispute, a court may decide whether probable cause exists. See *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) (citing *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)). Once probable cause relating to an offense is established, all § 1983 liability against the arresting officer(s) is barred, "even if the person was arrested on additional or different charges for which there was no probable cause." *Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Pourghoraishi v. Flying J., Inc.*, 449 F.3d 751, 762 (7th Cir. 2006). Whether an officer has probable cause to arrest depends on the requirements of the applicable state criminal law. *Pourghoraishi*, 449 F.3d at 761 (citing *Williams v. Jaglowski*, 269 F.3d 778, 782 (7th Cir. 2001)). Thus, as long as an officer has probable cause to believe that an individual "has committed even a very minor criminal offense in his presence," the officer may arrest the offender without violating the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

In this case, the facts and circumstances known to Defendants at the time of Plaintiff's arrest plainly support a reasonable belief that Plaintiff was committing a crime, as Plaintiff's

conduct could be reasonably believed to be criminal under at least one, if not more, Illinois statutes.[1] Under Illinois law, a municipality's property has been held as a matter of law to be state-supported land. See *People v. Stites*, 802 N.E.2d 303, 304 (Ill. App. Ct. 2003). Criminal trespass to state-supported land has three elements: 1) the person must receive notice from the State or representative that entry is forbidden; 2) the person must remain after being given notice to depart; and 3) the person must interfere with another person's lawful use or enjoyment of the building or land. 720 ILCS 5/21-5(a); *Sroga v. Weiglen*, 2010 WL 583912 at *5 (N.D. Ill. Feb. 17, 2010) (affirmed by 649 F.3d 604 (7th Cir. 2011)). In *Cross v. Chicago*, 1992 WL 245586 at *5-6 (N.D. Ill. Sept. 17, 1992), the court held that a police officer had probable cause to arrest a parent for criminal trespass when the parent did not comply with school rules and refused to leave. The plaintiff attempted to enter the office of a school principal without properly gaining authority, and the defendant-officer in charge of security stopped the plaintiff and told him twice to leave. When the plaintiff refused, the officer arrested him for criminal trespass to land. The court noted that the officer had the authority to remove unauthorized individuals from the school's premises and to determine whether an individual was unauthorized in the first instance.

As in *Cross*, at the time that Plaintiff was arrested, the facts known to Wright, and of which she had reasonably trustworthy information from her fellow officers, were sufficient to warrant a prudent person to believe that Plaintiff was in violation of Illinois's criminal trespass law. All of the elements of Illinois' criminal trespass statute are satisfied. It is undisputed that Plaintiff was in a Cook County Circuit Court facility. It also is undisputed that the CCCSD is responsible for enforcing the custody and security policies and procedures for Cook County

---

[1] Officers arguably had probably cause to arrest Plaintiff for disorderly conduct, which is defined as "any act [committed] in such an unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1); *Moore v. City of Chicago*, 2007 WL 3037121 at *6 (N.D. Ill. Oct. 15, 2007). Plaintiff's behavior, which was caught on video tape, was obviously disruptive.

Circuit Court facilities and that individuals entering Cook County Circuit Court facilities are subject to a search for objects jeopardizing the security or integrity of the facility or its occupants. Under the facility's policies, Plaintiff was not entitled to go past security until she had been screened and approved. Plaintiff was instructed repeatedly to go back through security after Suggs found a prohibited item (the electrical cord). Plaintiff was loud, disruptive, and argumentative. Plaintiff herself testified that Wright "kept saying, you have to go back through security, and [Plaintiff] kept saying, I went through security." Plaintiff also yelled and used expletives, stating, "No. I'm not doing that again, and you're not searching me again. This is harassment, get these fucking thugs away from me."

After Plaintiff refused to comply with the security screening procedure, she received notice from Wright that if she refused to be screened, she would have to vacate the building. When she again refused to submit to a second screening, Wright and Allen informed Plaintiff that she must leave the building or she would be arrested for criminal trespass. According to the facility's policies, the officers had the authority to screen individuals and to remove unauthorized individuals from the facility's premises. When Plaintiff attempted to go to the clerk's office without approval, she violated the facility's policies. Plaintiff rejected clear directives to either proceed through security or leave. At this point, she was an unauthorized visitor on the premises, and Wright, as an agent of the owner or occupier of the land, had the authority to remove her from the premises if Plaintiff refused to leave of her own volition. See *Cross*, 1992 WL 245586 at *5-6; *People v. Gudgel,* 540 N.E.2d 391, 393 (Ill. App. Ct. 4th Dist. 1989) (holding that police officers can properly serve notice to leave the premises under Illinois' criminal trespass law and that it is prudent to delegate this function to the police); *People v. Thompson,* 372 N.E.2d 117, 118–19 (Ill. App. Ct. 3d Dist. 1978) (holding that police officer could properly arrest individuals

12

on school premises after directing that they vacate the premises pursuant to school superintendent's demand). It plainly was reasonable for Defendants to conclude that Plaintiff was in fact trespassing and therefore there was probable cause to arrest her.

In her response brief, Plaintiff argues that Defendants lacked probable cause because one of the necessary elements of criminal trespass to state-supported land is that "the offender interrupts someone's use of the public building." Pl.'s Resp. at 6. Plaintiff correctly notes that Illinois courts have defined "interruption" to mean "conduct which by its nature tends to hinder, disrupt, or obstruct the orderly function of the official enterprise being carried on in the building or on the land." *Id.* (citing *Holtzman*, 10 Ill. App. 3d at 529-30). Plaintiff then cites *People v. Duda*, 403 N.E.2d 819 (4th Dist. 1980), and argues that "the interruption of officers or employees of the building does not meet this element." Pl.'s Resp. at 6 (boldface omitted). Plaintiff further argues that record shows that other patrons of the courthouse "walked by without even looking at [her] or the events" and thus no one was interrupted.

Plaintiff's misapprehends the offense of criminal trespass to state-supported land. First, *Duda* dealt with whether sufficient evidence was presented at trial to show that Defendants interfered with another person's lawful use and enjoyment of the land, not whether there was probable cause to arrest. Even if Defendants ultimately lacked evidence that Plaintiff interrupted business at the courthouse as required to convict her of criminal trespass to state-supported land, the record contains ample evidence to support Defendants' belief that Plaintiff was committing a crime at the time of Plaintiff's arrest.

Moreover, the Seventh Circuit has found that disrupting employees, including law enforcement officers, on state-supported land, is sufficient to meet the "interference" element of criminal trespass to state supported land. In *Sroga v. Weiglen*, 649 F.3d 604 (7th Cir. 2011), the

court found that the defendant officers had probable cause to arrest the plaintiff for criminal trespass to state supported land (720 ILCS 5/21-5(a)) when he was caught walking across a police parking lot in violation of posted signage and "peering inside each car." *Sroga*, 649 F.3d at 606. When a police officer noticed him, the plaintiff struck up a conversation with an officer who was sitting in one of the cars, pretending that she was an "old friend." *Id.* The plaintiff was arrested on the charge of criminal trespass to state-supported land. *Id.* at 608. The plaintiff's case was never prosecuted, and he later brought a § 1983 claim against the officers, claiming that they lacked probable cause for his arrest. *Id.* at 606-608. The Seventh Circuit concluded that the plaintiff's "shenanigans in the lot – his peering into the police cars and his pestering the officer whom he found sitting in her police car – [] gave the police probable cause to believe that he was interfering with the lawful use of the land." *Id.* at 609. Thus, the court affirmed summary judgment in favor of the defendants. *Id.* at 609-10. Here, the record contains ample evidence to show that Plaintiff caused a disturbance and, at a minimum, "pester[ed]" the officers, thereby interfering with the officers' efforts to maintain security within the building.

Similarly, the fact that Plaintiff had a court order from Judge Pantle, a judge based out of the courthouse located at 26th Street and California, does not defeat probable cause. Plaintiff did not produce and display that (or any other) order during the security screening process on October 10, 2007, and the order does not specifically address a "nebulizer kit" or electric cords, nor does it not specify the courthouse into which Plaintiff is allowed to bring medication and food.

Plaintiff also argues that the metal detector never flashed, and therefore the officers did not have probable cause to arrest her. Whether the magnetometer flashed is irrelevant to whether the officers had probable cause to arrest Plaintiff. Allen was told by Suggs that Plaintiff had a

14

prohibited item. Wright learned from other sheriff's deputies that Plaintiff was refusing to comply with the public search protocol for entering the facility at 555 W. Harrison. Wright made the decision to arrest Plaintiff based on reasonably trustworthy information given to her by fellow officers. Plaintiff does not deny that she was present at a publically owned courthouse, that she was told to repeat the security screening and refused, or that she refused to leave the courthouse when Defendants ordered her to do so. Moreover, despite her misguided legal argument that the "interference" element of criminal trespass to state-supported land does not include interfering with officers or building employees, Plaintiff admits in her response that the October 10 altercation consumed the time and attention of, by her count, a "dozen or so Sheriff officers" who "abandoned their stations at the security entrance" for "at least 5-10 minutes." Because Defendants unquestionably had probable cause to arrest Plaintiff for criminal trespass to state-supported land, the Court grants summary judgment for Defendants on Plaintiff's federal claims for false arrest, seizure, and imprisonment.

### B. Due Process

Plaintiff also claims that Defendants violated her due process rights when Allen and Wright allegedly recorded lies in their incident and arrest reports and gave false information under oath in order to cause an unlawful arrest and pursue a fraudulent prosecution without probable cause. Specifically, Plaintiff claims that Wright lied under oath when she testified at a bail revocation hearing on October 12, 2007. Plaintiff originally alleged that Wright lied when she stated that Plaintiff hid an electric cord, triggered the magnetometer, and refused to go through security on October 10, 2007, and when she stated that Plaintiff had become hysterical and said she had been raped by officers. During Plaintiff's deposition, she clarified that Wright testified that she had not witnessed the magnetometer beep, but that Wright was told that the

magnetometer beeped; that Plaintiff refused to go through security; and that Plaintiff was hiding a cord.

"A plaintiff cannot state a due process claim 'by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment.'" *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009) (quoting *McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003)); see also *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, that claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."); *Graham v. Connor*, 490 U.S. 386, 394 (1989). Once Plaintiff's § 1983 claim shifted from a Fourth Amendment violation to a Fourteenth Amendment violation, her claim essentially became one for malicious prosecution, rather than for a due process violation. See *McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003) (finding that "to the extent [plaintiff] maintains that [defendant] denied him due process by causing him to suffer a deprivation of liberty from prosecution and a contrived conviction * * * deliberately obtained from the use of false evidence, his claim is, in essence, one for malicious prosecution, rather than a due process violation.") (internal citations omitted). As the Seventh Circuit emphasized in *Newsome v. McCabe,* "the existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution." 256 F.3d 747, 750 (7th Cir. 2001). Illinois has a common law tort action for malicious prosecution. *Miller v. Rosenberg,* 749 N.E.2d 946, 951-52 (Ill. 2001). Thus, any claim that Plaintiff has for malicious prosecution arises under Illinois law. *Newsome,* 256 F.3d at 750. "In sum, [Plaintiff] cannot do an end run around the foregoing precedent by combining what are essentially claims for false arrest under

the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment." *McCann*, 337 F.3d at 786.

As previously set forth, Plaintiff's claim of unlawful arrest fails. Furthermore, Counts III to VI of Plaintiff's complaint, including her state law claim of malicious prosecution, have been dismissed. Thus, Plaintiff has no valid due process claim. Moreover, even if she could clear the legal hurdle articulated above, Plaintiff has not presented any admissible evidence that Allen falsely testified, falsified reports, or in any way lied to procure an unlawful arrest or that Wright misrepresented the facts as she believed them to be during the encounter. Summary judgment is appropriate on Count II.

**IV.    Conclusion**

For these reasons, the Court grants the Cook County Defendants' motion for summary judgment [76]. Judgment will be entered in favor of Defendants and against Plaintiff Linda Shelton on all claims.

Dated:  January 18, 2013                           _____
                                                    Robert M. Dow, Jr.
                                                    United States District Judge